Shannon B. Nakabayashi (State Bar No. 215469)
Andres L. Uriarte (State Bar No. 347388)
JACKSON LEWIS P.C.
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone: (415) 394-9400
Facsimile: (415) 394-9401
E-mail: Shannon.Nakabayashi@jacksonlewis.com
E-mail: Andres.Uriarte@jacksonlewis.com

Attorneys for Defendant
SYNERGY HEALTH AST, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS ANTHONY CARMONA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SYNERGY HEALTH AST, LLC a Delaware limited liability company; STERIS CORPORATION, an Ohio corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. _____<br><br>[Removed from Sonoma County Superior Court Court Case No. 26CV00535]<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. SECTION 1441**<br><br>*[Filed concurrently with Declaration of Shannon B. Nakabayashi; Civil Cover Sheet; Corporate Disclosure Statement Pursuant to FRCP 7.1]*<br><br>State Complaint Filed: January 20, 2026 |

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

CALIFORNIA AND TO PLAINTIFF LUIS ANTHONY CARMONA AND HIS ATTORNEYS

OF RECORD:

PLEASE TAKE NOTICE that Defendant SYNERGY HEALTH AST, LLC ("Synergy")

and Defendant STERIS CORPORATION ("Steris")(collectively referred to as "Defendants")

remove the above-entitled action to this Court from the Superior Court of the State of California,

County of Sonoma pursuant to 28 U.S.C. § 1441.  Defendants invoke this Court's original

1

DEFENDANT'S NOTICE OF REMOVAL

jurisdiction under 28 U.S.C. § 1332(d) (the Class Action Fairness Act) ("CAFA").  Defendants submit this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff LUIS ANTHONY CARMONA ("Plaintiff") against Defendants and without conceding that Plaintiff has pleaded any claims upon which relief can be granted.  This removal is based on the following grounds

## I.   PROCEDURAL BACKGROUND.

1.   On January 20, 2026, Plaintiff filed a class action complaint in the Superior Court of the State of California, County of Sonoma, entitled *Luis Anthony Carmona v. Synergy Health AST, LLC.,* Case No. 26CV00535 (the "State Court Complaint"). (Declaration of Shannon B. Nakabayashi in Support of Defendants' Notice of Removal ("Nakabayashi Decl.") ¶3.)

2.   On February 12, 2026, Plaintiff served copies of the State Court Complaint, the Summons, Civil Lawsuit Notice, and Civil Cover Sheet on Steris. (*Id*.) True and correct copies of the State Court Complaint, the Summons, Civil Lawsuit Notice, and Civil Cover Sheet are attached as **Exhibit A** to Nakabayashi Decl.

3.   February 24, 2026, Plaintiff served copies of the State Court Complaint, the Summons, Civil Lawsuit Notice, and Civil Cover Sheet on Synergy. (*Id. at* ¶4.) True and correct copies of the State Court Complaint, the Summons, Civil Lawsuit Notice, and Civil Cover Sheet are attached as **Exhibit B** to Nakabayashi Decl.

4.   On March 13, 2026, Defendants timely filed an Answer to Plaintiff's Complaint in the Superior Court of the State of California, County of Sonoma.  (Nakabayashi Decl., at ¶5.) A true and correct copy of Defendants' Answer is attached to Nakabayashi Decl. as **Exhibit C**.

5.   **Exhibits A, B and C** constitute all the pleadings that have been served in this action as of the date of the filing of this Notice of Removal.

## II.   REMOVAL IS TIMELY.

6.   Plaintiff served Steris with the Complaint on February 12, 2026, and thus, the present Notice of Removal is timely under 28 U.S.C. §§ 1446(b) and 1453.  *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999).  No previous Notice of Removal has been filed or made with this Court.

III.    **NOTICE.**

7.    Defendants will promptly serve this Notice of Removal on all parties and promptly file a copy of this Notice of Removal with the Clerk of the Superior Court, County of Sonoma, as required by 28 U.S.C. § 1446(d).

IV.    **PLAINTIFF'S ALLEGATIONS.**

8.    Plaintiff avers that he is "a California resident that has worked for Defendants in the County of Sonoma, as an hourly, non-exempt Radiator Operator since approximately April 2022." (*See* Complaint ¶¶ 7, 14.)

9.    Plaintiff's Complaint alleges a putative class of "all persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class certification to the Class is sent." (*Id.* at ¶ 24.) Therefore, the relevant class period is from January 20, 2022, through the present (the "Putative Class Period"). Defendants are not conceding that Plaintiff's proposed class definition is the proper scope of the putative class.

10.    Plaintiff alleges eight (8) claims on behalf of himself and the putative class members: (1) failure to pay minimum wages (*Id.* at ¶¶ 31-40, 82); (2) failure to pay overtime compensation (*Id.* at ¶¶ 41-49, 83); (3) failure to provide meal periods (*Id.* at ¶¶ 50-53, 85); (4) failure to authorize or permit rest breaks (*Id.* at ¶¶ 54-57, 86); (5) failure to indemnify necessary business expenses (*Id.* at ¶¶ 58-61, 87); (6) failure to timely pay final wages at termination (*Id.* at ¶¶ 62-68); (7) failure to provide accurate itemized wage statements (*Id.* at ¶¶ 69-76, 84, 88-89); (8) unfair business practices (*Id.* at ¶¶ 77-81, 95).

V.    **THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA.**

11.    Plaintiff brings this action as a putative class action.[1]  Removal under CAFA is proper pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 because (1) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5,000,000, exclusive of interest and

---

[1] Defendants deny and reserve the right to contest at the appropriate time, that this action can properly proceed as a class action.

DEFENDANT'S NOTICE OF REMOVAL

costs; (2) the aggregate number of putative class members in all proposed classes is 100 or greater; and (3) diversity of citizenship exists between at least one putative class member and the named Defendants in this matter. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1089–90, 1090 n.2 (9th Cir. 2010) (hereinafter *United Steel*) (finding that putative class actions satisfying the class action definition and numerosity requirement of § 1332(d)(5)(B) may be removed to federal court under § 1446). Although Defendants deny Plaintiff's factual allegations and deny that Plaintiff or the class that he purports to represent are entitled to the relief requested, all requirements for jurisdiction under CAFA have been met in this case.

### A. The Putative Class Has More Than 100 Members.

12. To remove under CAFA, the aggregate number of putative class members in all proposed classes must be greater than one hundred. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B); *United Steel*, *supra* 602 F.3d at 1090, 1090 n.2. Here, Defendants meet that criteria. (Declaration of Ines Avila in Support of Defendants' Notice of Removal ("Avila Decl.") ¶6.) (Avila Decl., ¶9.)

### B. Diversity Of Citizenship Exists.

13. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists – that is, one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(a) (under CAFA's minimal diversity requirements, diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant"); *United Steel*, *supra* 602 F.3d at 1090–91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

14. "An individual is a citizen of the state in which he is domiciled; domicile is determined by an individual's 1) residence in a state, and 2) his intent to remain indefinitely." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)); *see also Garza v. Brinderson Constructors,*

4

*Inc.*, 178 F. Supp. 3d 906, 913 (N.D.Cal. 2016). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). "Place of employment is another factor relevant to domicile[.]" *Garza v. Brinderson Constructors, Inc.*, *supra* 178 F. Supp. 3d at 914. The Complaint avers that Plaintiff is a California resident who has worked for Defendants in the County of Sonoma. . . .." (Complaint ¶14.) Thus, at least one putative class member is a citizen of California for diversity jurisdiction purposes.

15.     Under CAFA, a "corporation is a citizen of (1) the state under whose laws it is organized or incorporated; and (2) the state of its 'principal place of business'" for diversity purposes. *David v. HSBC Bank Nevada, N.A.*,557 F.3d 1026, 1028 (9th Cir. 2009) (citing U.S.C. 1332(c)(1)). Under the "nerve center" test, the principal place of business is the state where the "officers direct, control, and coordinate" the corporation's activities and where the corporation maintains its headquarters. *Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010) (hereinafter *Hertz*). As the U.S. Supreme Court explained: "We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center[.]" *Hertz, supra* 559 U.S. at 92-93 (2010). A corporation can only have one "nerve center." *Id*. at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. *Id*.

16.     Steris is a corporation organized under the laws of the state of Ohio. (Avila Decl., ¶4.)

17.     Steris is an Ohio Corporation with its principal place of business in Mentor, Ohio. (Avila Decl., ¶5.)

18.     Accordingly, Steris is a citizen of Ohio for purposes of removal. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State . . . by which it has been

5

incorporated and of the State . . . where it has its principal place of business").

19. It is not necessary for DOES 1 through 100 to join in this removal as they have been sued under fictitious names, have not been served or received the Summons or the Complaint, and, under 28 U.S.C. § 1441(b)(1), are disregarded for purposes of removal and are not proper parties in this Court.

20. Accordingly, there is diversity jurisdiction under CAFA. To reiterate, *at least one member* of the putative class is a citizen of a state different from a defendant for the purpose of determining diversity. Steris is a citizen of Ohio. 28 U.S.C. §§ 1332(d)(10). As a result, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any Defendant").

### C. The Amount in Controversy Exceeds $5,000,000.

21. Pursuant to CAFA, the claims of the individual members in a putative class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). The claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds that sum. 28 U.S.C. § 1332(d)(6); *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013). Plaintiff may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum. *See Standard Fire Ins. Co. v. Knowles*, *supra* 568 U.S. at 590. Defendant need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997) (hereinafter *Singer*). "Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorney's fees awarded under fee-shifting statutes or contract." *Fritsch, supra* 899 F.3d at 793; *see also Frias-Estrada v. Trek Retail Corp.*, 534 F. Supp. 3d 1058, 1061 (N.D. Cal. 2021) (hereinafter *Frias-Estrada*).

22. A removing party seeking to invoke CAFA jurisdiction "need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold" within

6

the removing party's notice of removal. *See Dart Cherokee Basin Operating Company, LLC v. Owens*, 574 U.S. 81, 89 (2014) (hereinafter *Dart Cherokee*) (emphasis added); *Frias-Estrada, supra* 534 F. Supp. 3d at 1062. In the case of a dispute, Defendant's burden to establish the amount in controversy is the preponderance of the evidence standard. *See Dart Cherokee, supra* 574 U.S. at 89*; see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases). "[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109–14, at 42 (2005) (citation omitted).

23. Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Dart Cherokee, supra* 574 U.S. at 84; *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020) (affirming cases holding that a removing defendant's notice of removal need not contain evidentiary submissions); *Craig v. Universum Communs., Inc.*, 2020 U.S. Dist. LEXIS 144046, at *9 (N.D. Cal. Aug. 11, 2020) ("Defendant is not required to submit outside evidence[.]"). To put a finer point on it, a removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci America, Inc.*, Case No. 2:14-cv-7468-SVW (JPRx), 2015 U.S. Dist. LEXIS 1672, at *12 (C.D. Cal. Jan. 7, 2015); *Burgos v. Citibank, N.A.*, No. 23-cv-01907-AMO, 2023 U.S. Dist. LEXIS 151530, at *10 (N.D. Cal. Aug. 28, 2023). The ultimate inquiry is what amount is put "in controversy" by a plaintiff's complaint, not what a defendant will actually owe. *LaCross v. Knight Transport. Inc.*, 775 F.3d 1200, 1202 (explaining that courts are directed "to first look to the complaint in determining the amount in controversy") (citation omitted); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, Defendant "are not stipulating to damages suffered, but only estimating the damages in controversy"). A defendant's burden remains unchanged even if a plaintiff "affirmatively contend[s] in their complaint that damages do not exceed $5 million." *Ibarra v. Manheim Invs., Inc., supra* 775 F.3d at 1197.

DEFENDANT'S NOTICE OF REMOVAL

24.     However, as detailed below, Defendants have plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to CAFA.

25.     Although Defendants deny Plaintiff's factual allegations and denies that Plaintiff or the putative class he seeks to represent is entitled to any relief, Plaintiff's allegations have more likely than not put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[2]

26.     Plaintiff alleges eight (8) claims on behalf of himself and the putative class members: (1) failure to pay minimum wages (*Id.* at ¶¶ 31-40, 82); (2) failure to pay overtime compensation (*Id.* at ¶¶ 41-49, 83); (3) failure to provide meal periods (*Id.* at ¶¶ 50-53, 85); (4) failure to authorize or permit rest breaks (*Id.* at ¶¶ 54-57, 86); (5) failure to indemnify necessary business expenses (*Id.* at ¶¶ 58-61, 87); (6) failure to timely pay final wages at termination (*Id.* at ¶¶ 62-68); (7) failure to provide accurate itemized wage statements (*Id.* at ¶¶ 69-76, 84, 88-89); (8) unfair business practices (*Id.* at ¶¶ 77-81, 95).

27.     As discussed below, some of these causes of action carry with them the possibility of recovering damages and/or statutory penalties, thereby making it a virtual certainty that Plaintiff would recover over $5,000,000 if the event he succeeds at trial.

**1.  Meal and Rest Period Premium Claims**

28.     According to Labor Code Section 226.7, no employer shall require any employee to work during any meal or rest period.  Cal. Lab. Code § 226.7(a).  If an employer fails to provide an employee a meal or rest period, the employer shall pay the employee an additional hour of pay at the employee's regular rate of compensation for each workday that the meal or

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint.  Defendants' references to potential damage amounts based on Plaintiff's allegations are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum.  Defendants maintain that each of Plaintiff's claims is without merit and that Defendants are not liable to Plaintiff or any putative class member.  In addition, Defendants deny that liability or damages can be established on a classwide basis.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commcn's., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

DEFENDANT'S NOTICE OF REMOVAL

rest period is not provided.  Cal. Lab. Code § 226.7(b).

29.    Plaintiff alleges Defendants "*regularly* failed to provide Plaintiff and the Class with both meal periods as required by California law[,]" and by their failure "to permit and authorize Plaintiff and the Class to take all meal periods as alleged (or due to the fact that Defendants made it impossible or impracticable to take these uninterrupted meal periods), Defendants willfully violated the provisions of Section 226.7 . . . and the applicable wage orders." (Complaint ¶¶ 51-52.) (Emphasis added.)

30.    In a similar vein, Plaintiff alleges "Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all rest periods or payment of one additional hour of pay at Plaintiff's and the other class members' regular rate of pay when a rest period was missed, and they did not receive all rest periods or payment of one additional hour of pay at Plaintiff's and the other class members' regular rate of pay when a rest period was missed."; and, "Defendants required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute net rest period per each four (4) hour period worked.". (Complaint ¶¶ 51-57.)

31.    Based on the allegations in the Complaint, and assuming a maximum 20% violation rate is supported, there would be one missed meal period as well as one missed rest period per week. *See Burgos v. Citibank, N.A.*, *supra* at **10-11 (approving a 20% violation rate where the complaint alleged violations occurring "from time to time" as well as violations resulting from company "policy and procedure," "uniform practice," and "pattern and practice").

32.    Plaintiff alleges that he and Putative Class Members were typically scheduled to work 5 days in a workweek, and typically in excess of eight hours in a single workday.

33.    Putative Class Members worked at least 43,000 workweeks during the Putative Class Period at an average hourly rate of approximately $27.95 through March 12, 2026. (Avila Decl., ¶¶6,7.)    Based on the assumption that there was one rest period and one meal period premium owed per workweek and using the average hourly wage of $27.95 per hour, the potential meal and rest period damages are conservatively **$2,403,700** [2 premiums *$27.95 per hour x 43,000.)

DEFENDANT'S NOTICE OF REMOVAL

## 2. Failure to Pay Final Wages Timely

34.    Under Labor Code Section 203, Plaintiff's sixth cause of action, Plaintiff and putative class members seek waiting time penalties from the date their earned and unpaid wages were due, upon termination or resignation, until paid, up to a maximum of thirty days. Cal. Lab. Code § 203(a). These wages are to be paid immediately on the date of termination, or within 72 hours of resignation. Cal. Lab. Code §§ 201-203.

35.    Specifically, Plaintiff alleges "Defendants knew or should have known that Plaintiff and the other class members were entitled to receive all wages owed to them upon discharge or resignation […] and they did not receive all such wages owed to them at the time of their discharge or resignation."; "Defendants failed to pay Plaintiff and the other class members all wages owed to them upon discharge or resignation."; and "Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their earned and unpaid wages within seventy-two (72) hours of their leaving Defendants' employ." (Complaint ¶¶ 63-67.)

36.    According to Defendants' personnel files, there are over 120 employees whose employment was terminated by Defendant in the three years prior to the filing of the Complaint at an average hourly rate of $27.95. (Avila Decl., ¶8.)    These 120 plus former California employees may be entitled to damages should Plaintiff succeed in certifying the putative class and prevailing at trial. The former employees all left Defendants' employment more than 30 days prior to the filing of this notice of removal. As a result, they would all be entitled to a full 30 days of penalties.

37.    Assuming a putative subclass of 120 former employees, the conservative waiting time penalty amount under Labor Code Section 203 is **$804,960** (120 putative class members x $27.95 per hour x 8 hours x 30 days).

## 3. Failure to Provide Accurate Wage Statements

38.    Under Labor Code Section 226, Plaintiff's seventh cause of action, Plaintiff and Putative Class Members seek penalties for Defendant's "knowing" failure to provide itemized

accurate wage statements. Cal. Lab. Code §§226(a), (e).

39.    Specifically, Plaintiff alleges "Defendants knew or should have known that Plaintiff and the other class members were entitled to receive complete and accurate wage statements in accordance with California law, but they did not receive complete and accurate wage statements from Defendants [...]"; "Defendants failed to provide complete or accurate wage statements to Plaintiff and the other class members."; "Defendants have intentionally and willfully failed to provide the Plaintiff and the other class members with complete and accurate wage statements.  The deficiencies include but are not limited to: the failure to include total number of hours worked by Plaintiff and the other class members." (Complaint ¶¶70-74.)

40.    Plaintiff also alleges "Plaintiff and the other class members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a) or an aggregate penalty not exceeding $4,000 per employee." (Complaint ¶75.)

41.    According to Defendants' personnel files, more than 270 current and former employees worked for Defendants during the one-year limitations period prior to the filing of the Complaint.  (Avila Decl., ¶9.)

42.    Assuming that each of the approximately 270 Putative Class Members received 25 noncompliant wage statements during the applicable timeframe, this claim alone places in controversy at least **$661,500** ([$50 x 1 initial violation x 270 employees] + [$100 x 24 subsequent violations x 361 employees]).

### 4.  **Failure to Pay Overtime**

43.    Plaintiff's second cause of action alleges that Defendants failed to compensate Plaintiff and Putative Class Members for all overtime hours worked. (Complaint ¶¶ 16, 42-47.) Plaintiff alleges that throughout the statutory period, "Plaintiff and the Class worked more than 8 hours in a workday and more than 40 hours in a workweek." (Complaint ¶¶ 16, 44.)  He alleges that he "typically" worked more than 8 hour in one day. (Complaint ¶14.)

44.    Under Labor Code § 510, overtime work must be compensated at one and one-half times the regular rate of pay for an employee.

11

45.    Courts in this Circuit have found that an assumption of 1 hour of overtime per week can be a reasonable assumption where a plaintiff alleges that the putative class "regularly" worked overtime. *Mackall v. HealthSource Glob. Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 U.S. Dist. LEXIS 119292, at *10 (N.D. Cal. Sep. 2, 2016)(denying motion to remand where plaintiff alleged "regular" overtime violations); *Blevins v. Republic Refrigeration, Inc.*, No. CV 15-04019 MMM (MRWx), 2015 U.S. Dist. LEXIS 130521, at *32 (C.D. Cal. Sep. 28, 2015) (one hour of unpaid overtime per week "reasonable" based on plaintiffs' allegations that defendant "regularly" miscalculated overtime).

46.    Conservatively estimating that Plaintiff and the Putative Class Members attempt to recover even 1 hour of unpaid overtime wages per applicable workweek, at the Putative Class Members average hourly wage of $27.95, this claim alone places in controversy at least $**1,802,775** (1 hours/workweek x 43,000 workweeks x $27.95 x 1.5 overtime multiplier).[3]

### 5.  Other Claims, Attorneys Fees

47.    In addition to these claims, Plaintiff seeks damages on behalf of himself and the putative class for: (1) failure to pay minimum wages (Complaint at ¶¶ 32-36); (2) unreimbursed business expenses (*Id.* at ¶¶ 59-61).   These potential damages and/or penalties significantly increase the amount in controversy.

48.    Finally, Plaintiff seeks his attorneys' fees and costs. (Complaint at Prayer for Relief.)  Although Defendants deny Plaintiff's claim for attorneys' fees, for purposes of removal, the Ninth Circuit uses a benchmark rate of twenty-five percent of the potential damages as the amount of attorneys' fees. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) (noting that federal courts have consistently approved of attorney fee awards over the 25% benchmark, specifically at a rate of 30% or higher); *In re Quintus Sec. Litig.*, 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund).

49.    Accordingly, the following is the minimum amount in controversy based on the

---

[3] For convenience and ease of calculation, Defendants assume that the hourly overtime rate is 1.5 times the average hourly rate of $27.95. Defendants deny that they failed to compensate Plaintiff and the putative Class for all overtime hours worked at 1.5 times the "regular rate of pay" pursuant to Labor Code § 510.

allegations alleged by Plaintiff:

| CLAIM | AMOUNT IN CONTROVERSY |
|---|---|
| Meal & Rest Break Premium Claim | $2,403,700 |
| Failure to Timely Pay Final Wages | $737,800 |
| Failure to Provide Accurate Wage Statements Claim | $661,500 |
| Failure to Pay Overtime Compensation | $1,802,775 |
| SUBTOTAL | $5,605,775 |
| Attorneys' Fees @ 25% | $1,401,443. |
| TOTAL | $7,007,218. |

50. Based on the foregoing conservative analysis all requirements for CAFA removal are more than satisfied here.

## VI. SUPPLEMENTAL JURISDICTION.

51. To the extent any of Plaintiff's claims are not removable under CAFA, this Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a), because they are part of the same common nucleus of operative facts over which this Court has original jurisdiction.

## VII. VENUE.

53. "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the Defendant, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

54. This action was filed in the Superior Court in and for the County of Sonoma. Thus, venue of this action properly lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84(a) and 1441(a).

13

## VIII.   CONCLUSION.

55.    Based on the foregoing, Defendants request that this action be removed to this Court.   If any question arises as to the propriety of removal of this action, Defendants respectfully requests the opportunity to present a brief and oral argument in support of its argument that removal is proper.

Dated:  March 16, 2026

JACKSON LEWIS P.C.

By:  /s/ Andres L. Uriarte
_____

Shannon B. Nakabayashi
Andres L. Uriarte
Attorneys for Defendant
SYNERGY HEALTH AST, LLC

DEFENDANT'S NOTICE OF REMOVAL